**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KRISTYL MILLER**,<br><br>Plaintiff,<br><br>v.<br><br>**GOLDCREST PROPERTIES, LLC,** *et al.*,<br><br>Defendants. | Civil Action No. 3:22-cv-04777 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Goldcrest Properties, LLC ("Goldcrest"), Cedar Brook NJ, LLC ("Cedar Brook"), Hillel Hertz, Mark Hirsch, Rouey Malul, and Jay Fischer (together, "Defendants") seeking to dismiss Counts Eight through Eleven and Thirteen of Plaintiff Kristyl Miller's ("Plaintiff" or "Miller") Complaint against individually named Defendants Hertz, Hirsch, Malul, and Fischer (together, "Individual Defendants"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 6.) Plaintiff opposed the Motion (ECF No. 8) and Defendants replied (ECF No. 10).

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**[1]

This case arises out of Plaintiff's prior employment with Defendants from January 2020 until her termination in January 2022. ("Compl." ¶ 20, ECF No. 1.)

Plaintiff is an African American Muslim female and resident of Gloucester County, New Jersey. (*Id.* ¶¶ 8, 18, 19, 35.) Defendant Goldcrest is a commercial real estate firm that owns and manages residential properties in Pennsylvania, New Jersey, Delaware, and Connecticut. (*Id.* ¶ 9.) Defendant Cedar Brook is a New Jersey property management company owned and operated by Goldcrest. (*Id.* ¶ 10.) Goldcrest and Cedar Brook are managed by Defendants Hertz and Hirsch. (*Id.* ¶¶ 12, 13.)

On January 21, 2020, Plaintiff was hired as a leasing agent by Goldcrest and Cedar Brook and was based in their New Jersey office. (*Id.* ¶¶ 21, 22.) She was later promoted to assistant property manager in or around August 2020. (*Id.* at ¶ 21.) During her employment, Plaintiff was first supervised by Defendant Malul, then Defendant Fischer, both managers employed by Cedar Brook and Goldcrest. (*Id.* ¶¶ 14, 15, 23.) Plaintiff was also generally supervised by Hertz and Hirsch, who were Goldcrest's and Cedar Brook's Chief Executive Officer and President, respectively. (*Id.* ¶¶ 12, 13, 23.)

During her employment, Plaintiff alleges that she was subjected to harassment and discriminatory treatment by Defendants' management because of her race, religion, gender, disability, and association with her wife's disability. (*Id.* ¶¶ 25, 28.) For instance, Plaintiff alleges she observed that Defendants' management "had a pattern of hiring and then quickly firing Black employees at Plaintiff's location, consistently insinuating that Black employees were not truthful

---

[1]     For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court states only those facts relevant to this Motion.

or not performing their jobs well." (*Id.* ¶ 30.) On several occasions, Defendants' management also made inappropriate comments to Plaintiff regarding her race and religion. (*Id.* ¶¶ 29, 31, 32, 33, 37, 38.)

Additionally, Plaintiff suffered from several mental health disorders, including bipolar disorder and depression, which Defendants were aware of. (*Id.* ¶¶ 41, 46.) In early 2021 and in December 2021 or January 2022, Plaintiff requested reasonable accommodations for her disabilities from Defendants in the form of time off from work. (*Id.* ¶¶ 43-48.) Plaintiff alleges that Defendants' management exhibited clear frustration towards Plaintiff's need for reasonable accommodations. (*Id.* ¶ 50.) Furthermore, Plaintiff's wife suffered from a medical condition called uterine fibroids, which required her to undergo surgery in or about November 2021. (*Id.* ¶¶ 52-53.) As a result, from about November 23, 2021 to January 18, 2022, Plaintiff was granted leave, pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), to care for her wife. (*Id.* ¶¶ 53, 54.) While Plaintiff was on FMLA leave, however, Defendants subjected her to harassing emails and texts on "an excessive basis," such as "requiring Plaintiff to address or handle work matters." (*Id.* ¶ 55.) This included directing Plaintiff to attend a meeting on January 12, 2022. (*Id.* ¶ 63.) The reason for the meeting was because Plaintiff had informed many of Defendants' tenants of their rights related to Defendants' "clearly unfair and illegal treatment of the tenants" and "unsafe living conditions within Defendants' properties." (*Id.* ¶¶ 56-61.) As a result of Plaintiff's conduct, several tenants filed complaints with the New Jersey Department of Health against Defendants. (*Id.* ¶ 62.)

During the January 12, 2022 meeting, Hirsch told Plaintiff that "she should think about whether she really wanted her job and if it 'was the job for Plaintiff,' because Plaintiff allowed tenants to exercise their legal rights." (*Id.* ¶ 63.) Hirsch also "referenced Plaintiff's FMLA leave" and that "Defendants and Plaintiff would have a serious talk after Plaintiff 'returned from FMLA

3

leave.'" (*Id.* ¶ 64.) Subsequently, Plaintiff notified Defendants' management through email as to the conversation she had with Hirsch during the meeting. (*Id.* ¶ 65.) Around January 14, 2022, Plaintiff was locked out of her work email and her other accounts with Defendants. (*Id.* ¶ 66.)

On or about January 18, 2022, the date Plaintiff was to return from FMLA leave, Plaintiff was terminated. (*Id.* ¶ 67.)

Thereafter, on July 27, 2022, Plaintiff commenced this action against Defendants. (*See generally id.*) The Complaint asserts thirteen causes of action for hostile work environment and unlawful termination based on race, religion and disability, and retaliation, under the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.*, the Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1 *et seq.*, the FMLA, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-12 *et seq.* (the "NJLAD"). (*Id.* ¶¶ 70-124.) Here, Defendants move to dismiss Plaintiff's NJLAD claims, Counts Eight through Eleven and Thirteen, against the Individual Defendants. (ECF No. 6.)

## II.     LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to

survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The court must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler*, 578 F.3d at 211. A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.  DISCUSSION

In the Complaint, Plaintiff asserts several causes of action for violations of the NJLAD against all Defendants. As relevant here, Plaintiff brings discrimination, retaliation, and hostile work environment claims based on race and national origin (Count Eight), gender (Count Eleven), and religion (Count Thirteen). Plaintiff also brings claims for discrimination, retaliation, hostile

5

work environment and failure to accommodate based on her disability (Count Nine), and her association with her wife's disability (Count Ten).

Defendants move to dismiss each of Plaintiff's NJLAD claims against the Individual Defendants, arguing that each one fails to state a claim. Specifically, Defendants assert that Plaintiff's NJLAD claims against the Individual Defendants must be dismissed because Plaintiff has not plead any facts showing that these Defendants "willfully and knowingly" aided and abetted either Goldcrest or Cedar Brook in any violations of the NJLAD. (ECF No. 6-2 at 6-7.)

The NJLAD provides for individual liability for a supervisory employee where a plaintiff proves that the employee "aided and abetted" the employer's illegal conduct. *See* N.J.S.A. § 10:5-12(e); *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 593 (2008) ("[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting' mechanism" in the NJLAD.) (citations omitted). To establish an aiding and abetting claim, a plaintiff must show that the individual defendant (1) aided the party performing a wrongful act that causes an injury; (2) was generally aware of his role as part of an overall illegal or tortious activity at the time he provided the assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti*, 194 N.J. at 593 (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004)).

An individual supervisor can also be held liable under the NJLAD for his own wrongful conduct based on an "aiding and abetting" theory under N.J.S.A. § 10:5-12(e). *See DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) ("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct.

6

That implies the availability of personal liability for a violation of the NJLAD.") (citations omitted).[2]

Here, Plaintiff asserts that Individual Defendants are employees of Defendants and that they each had supervisory authority over Plaintiff. Thus, in order to establish individual liability against the Individual Defendants, Plaintiff's NJLAD claims must be based on a theory of aiding and abetting. N.J.S.A. § 10:5-12(e). However, the Complaint fails to assert an aiding or abetting claim. In fact, the words "aiding" and "abetting" do not appear anywhere in Plaintiff's Complaint. Nor does Plaintiff specifically allege how Individual Defendants "aided" or "abetted" in any alleged NJLAD violations. *See Tarr*, 181 N.J. at 83-84 (explaining "aiding and abetting" liability to require performance of wrongful act, awareness of illegality, and knowing and substantial assistance to principal violator). As such, Plaintiff's NJLAD claims against the Individual Defendants are dismissed without prejudice. *See, e.g., Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 591 (D.N.J. 2010) (dismissing plaintiff's NJLAD claims against individual defendants because the complaint did not assert an aiding and abetting claim).[3]

---

[2] In their briefing, Defendants contend that the opposite is true—that an individual supervisor cannot aid and abet his own conduct. (ECF No. 6-2 at 6-7.) This contention is incorrect. *See, e.g., Marino v. Westfield Bd. Of Educ.*, No. 16-361, 2016 U.S. Dist. LEXIS 65168, at *28-29 (D.N.J. May 18, 2016). Contrary to Defendants' contention, courts in this district and New Jersey state courts have overwhelmingly held that individually named defendants can be held personally liable for their own conduct under aiding and abetting provision of the NJLAD. *See Rowan v. Hartford Plaza Ltd, LP*, No. A-0107-11T3, 2013 N.J. Super. Unpub. LEXIS 766, at *19 (App. Div. Apr. 5, 2013) ("[A]ny suggestion that N.J.S.A. 10:5-12(e) permits individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct, appears to us to be untenable."); *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009) ("The [NJLAD] does not impose individual liability upon non-supervisory employees, but a supervisor may be liable for aiding and abetting his or her own conduct.") (citing *Hurley v. Atl. City Police Dep't.*, 174 F.3d 95, 126 (3d Cir. 1999)); *see also Thorbourne v. Public Serv. Enter. Grp.*, No. 15-3477, 2016 U.S. Dist. LEXIS 7769, at *12-13 n.4 (D.N.J. Jan. 22. 2016) (collecting cases).

[3] Further, the Court notes that even if Plaintiff had brought an aiding and abetting claim against the Individual Defendants, such a claim may be subject to dismissal based on the Complaint's failure to assert sufficient facts to support an aiding and abetting theory of liability. *See Figueroa*

Accordingly, the Court dismisses Plaintiff's NJLAD claims against the Individual Defendants (Counts Eight through Eleven and Thirteen).

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is granted. Counts Eight through Eleven and Thirteen are dismissed without prejudice with respect to claims against the Individual Defendants. To the extent Plaintiff believes she can plead additional facts to cure the deficiencies in her Complaint, Plaintiff is granted leave to file an amended complaint within thirty days from the date of the accompanying order. An appropriate Order will follow.

Date: **June 23, 2023**　　　　　　　　　　　　　　/s/ *Georgette Castner*
　　　　　　　　　　　　　　　　　　　　　　　　GEORGETTE CASTNER
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

*v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (dismissing NJLAD aiding and abetting claims where the complaint only stated "blanket assertions" against defendants without alleged specific conduct). For instance, as to Fischer, other than the allegations that Fischer was a "high-level manager" and was Plaintiff's supervisor for an unspecified period of time, (Compl. ¶¶ 15, 23), the Complaint fails to assert any specific allegations with respect to Fischer's role or involvement in the alleged violation of Plaintiff's rights under the NJLAD under any basis. As to Hertz, the Complaint does not allege any facts as to how Hertz aided and abetted Defendants in their discriminatory treatment of her based on her disability or her wife's disability. Similarly, as to Malul, with respect to disability discrimination, the sole factual allegation asserted in the Complaint is that Malul was aware of Plaintiff's disabilities. (Compl. ¶ 46) ("For example, Malul approached Plaintiff about being 'moody,' wherein Plaintiff explained the nature of her aforesaid mental health conditions and that Plaintiff took medication for same.") This allegation, on its own, falls short of a plausible claim of aider or abettor liability for a disability discrimination NJLAD claim. And to the extent Plaintiff seeks to hold the Individual Defendants liable for her alleged unlawful termination, the Complaint does not allege sufficient facts to warrant a reasonable inference that Malul, Fischer, or Hertz "substantially assisted" Defendants in terminating her.

8