## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

KRISTYL MILLER                          :
209 Narberth Ave, #B                    :
Sewell, NJ 08080                        :      CIVIL ACTION
                                        :      No.: 22-4777
            Plaintiff,                  :
     v.                                 :
                                        :
GOLDCREST PROPERTIES, LLC               :
36 Airport Road, Suite 301              :
Lakewood, NJ 08701                      :      **JURY TRIAL DEMANDED**
     and                                :
CEDAR BROOK NJ, LLC                     :
36 Airport Road, Suite 301             :
Lakewood, NJ 08701                      :
     and                                :
HILLEL HERTZ                            :
36 Airport Road, Suite 301             :
Lakewood, NJ 08701                      :
     and                                :
MARK HIRSCH                             :
36 Airport Road, Suite 301             :
Lakewood, NJ 08701                      :
     and                                :
ROUEY MALUL                             :
36 Airport Road, Suite 301             :
Lakewood, NJ 08701                      :
     and                                :
JAY FISCHER                             :
36 Airport Road, Suite 301             :
Lakewood, NJ 08701                      :
                                        :
            Defendants.                 :

## CIVIL ACTION COMPLAINT

Plaintiff, Kristyl Miller, by and through her undersigned counsel, hereby avers as follows:

## I.    INTRODUCTION

1.      This action has been initiated by Plaintiff against Goldcrest Properties, LLC, Cedar Brook NJ, LLC, Hillel Hertz, Mark Hirsch, Rouey Malul and Jay Fischer (*hereinafter* collectively referred to as "Defendants") for violations of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.) and The Conscientious Employee Protection Act ("CEPA" – N.J.S.A. 34:19-1 *et. seq.*). Plaintiff was subjected to a hostile work environment and unlawfully terminated by Defendants from her employment, and she suffered damages more fully described/sought herein.

## II.    JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred

in this judicial district, and in addition, Defendants are deemed to reside where they subject to personal jurisdiction, rendering Defendants residents of this District.

6.     Plaintiff properly exhausted her administrative remedies to proceed under federal laws asserted *infra* by filing with the Equal Employment Opportunity Commission ("EEOC") timely and by filing the instant lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of case closure.

### III.     PARTIES

7.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.     Plaintiff is an adult individual, with an address as set forth in the caption.

9.     Defendant Goldcrest Properties, LLC (hereinafter "Defendant Goldcrest") is a commercial real estate firm that purchases and manages multi- family assets/properties with an address as set forth in the caption. As of the filing of this lawsuit, Defendant Goldcrest owns and manages approximately 35 multi-unit residential properties across Pennsylvania, New Jersey, Delaware and Connecticut.

10.     Defendant Cedar Brook NJ, LLC (herein after "Defendant Cedar Brook") is a property management company owned and operated by Defendant Goldcrest with an address as set forth in the caption.

11.     Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors Defendants Cedar Brook and Defendant Goldcrest are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single, integrated and/or joint employer for purposes of the instant action.

12.     Upon information and belief, Hillel Hertz (*hereinafter* "Defendant Hertz" or "Hertz"), owner/partner and CEO of Defendants Cedar Brook and Goldcrest, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff), including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

13.     Upon information and belief, Mark Hirsch (*hereinafter* "Defendant Hirsch" or "Hirsch"), owner/partner and President of Defendants Cedar Brook and Goldcrest, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant CP, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

14.     Upon information and belief, Rouey Malul (*hereinafter* "Defendant Malul" or "Malul") is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendants Cedar Brook and Goldcrest, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

15.     Upon information and belief, Jay Fischer (*hereinafter* "Defendant Fischer" or "Fischer"), is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendants Cedar Brook and Goldcrest, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

16.     Upon information and belief, Defendants Hersch, Hertz, Fischer and Malul each directly participated in the decision to terminate Plaintiff, as each generally and consistently participated in the material decision making pertaining to Plaintiff's employment, and

Defendants Hirsch, Hertz and Malul were each present in informing Plaintiff of her termination. Upon information and belief, Plaintiff would not have been terminated without the agreement to do so by each of these individuals.

17.    At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV.    FACTUAL BACKGROUND

18.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

19.    Plaintiff is a Black/Hispanic female.

20.    Plaintiff is Muslim.

21.    Plaintiff began working for Defendants on or about January 21, 2020 and continued to work for Defendants until her unlawful termination on or about January 18, 2022.

22.    Plaintiff was originally hired as a Leasing Agent, however based on her excellent work ethic and performance, Plaintiff was promoted into the position of Assistant Property Manager in or around August of 2020.

23.    At all times during her employment with Defendants, Plaintiff worked from Defendants' Cedar Brook NJ LLC location at 828 Blackwood Clementon Road, Pine Hill, NJ 08021.

24.    Plaintiff was originally primarily supervised by Malul and then eventually Fischer. Plaintiff was also generally supervised by Hertz and Hirsch.

25.    During her tenure with Defendants, Plaintiff performed her job duties well and was a dedicated and hard-working employee.

26.     Unfortunately, as discussed more fully below, during her employment with Defendants, Plaintiff witnessed and/or was subjected to multiple forms of harassment and discrimination based on race and/or national origin, religion, gender, disability, for reasons associated with her wife's serious health conditions/disabilities and due to Plaintiff's FMLA needs.

27.     All of Defendants' management, including the individually named Defendants, are Caucasian and of Jewish descent.

28.     Moreover, other than Plaintiff, there were very few Black and/or minority employees within Defendants' workforce.

29.     During Plaintiff's employment with Defendants, Plaintiff witnessed multiple forms of harassment and race-based treatment, which was perpetuated by each of her aforementioned supervisors.

30.     For example, and not intended to be an exhaustive list, unlike her Caucasian and/or non-black co-workers: (1) policies were selectively enforced against Plaintiff and other Black employees; (2) Plaintiff and other Black employees were unfairly issued pretextual discipline, (3) Plaintiff was treated with less respect than her Caucasian and/or non-Black co-workers and talked down to; and (4) Defendants' management made discriminatory statements about Black employees, and Malul specifically expressed that he believed Black employees could not be trusted and were liars; thus, he routinely questioned Caucasian employees to see if black employees were telling the truth about certain issues.

31.     Throughout Plaintiff's tenure with Defendants, management (which upon information and belief included each of the aforementioned supervisors) had a pattern of hiring

and then quickly firing Black employees at Plaintiff's location, consistently insinuating that Black employees were not truthful or not performing their jobs well, which was not true.

32.     Additionally, Malul had consistently made several racially discriminatory and offensive comments regarding Black tenants.  For example, when a family of African tenants complained of having a roach problem, Malul said to Plaintiff, "what do you expect, they are African."  Malul also referred to Black tenants as "drug dealers" and stated that "they don't look like they are on the up and up." Malul would also laugh and tell racially insensitive jokes, asking Plaintiff, "you don't mind, right." Fischer had also made discriminatory comments pertaining to the premise that African American individuals should be feared, as though they are criminals or otherwise have a tendency to engage in illicit behavior.

33.     However, Plaintiff did in fact mind and Plaintiff was highly offended by these comments and behavior. Plaintiff objected to Malul's comments on several occasions, informing him that he could not say things like that and that Plaintiff found it to be offensive and discriminatory.

34.     Moreover, Plaintiff's Black (African-American) wife, Tasheena Miller (hereinafter "T. Miller"), who also worked for Defendants, was subjected to ridicule and hostility from Malul because of her race. For example, on one occasion, T. Miller, as a contractor, placed a particular outlet on the outside of a cabinet instead the inside because she did not want to damage the integrity of the cabinet. In response to this, Malul hostilely criticized her work, calling her a liar, and informing Plaintiff that she was dishonest and not to be trusted.

35.     In addition to the harassment and discrimination Plaintiff was subjected to and witnessed based on race, Plaintiff was also subjected to and witnessed discrimination and unfair

treatment based on gender, national origin/ancestry and/or religion, including by each of the aforementioned supervisors.

36.     By way of example, Defendants' management made discriminatory comments such as that "women should be at home barefoot and pregnant,"  and otherwise made comments about Plaintiff's appearance in a manner disparately from her male and/or Jewish counterparts.

37.     Plaintiff is Islamic (Muslim). The majority of Defendants' management was Jewish, with Executive leadership being entirely male and Jewish.

38.     Based on Plaintiff's experience and observations while working for Defendants, only Jewish males were permitted to hold any roles above Property Manager (as determined by each of the aforementioned supervisors, who upon information and belief made such promotion decisions), while the majority (if not all) of the administrative lower-level jobs in the corporate office are held by Jewish women.

39.     Hirsch and Hertz made discriminatory comments to Plaintiff that Plaintiff found highly offensive regarding her race and religion, including but not limited to Hirsch telling Plaintiff that she should listen to a certain Black Jewish rapper – who Plaintiff would undoubtedly like because Plaintiff is Black. Additionally, Hertz stated because he is Jewish Plaintiff and him "are the same," because "his people" have suffered the same as "Black people."

40.     Defendants had a history of brushing off complaints regarding concerns of discrimination in the workplace. For example, Plaintiff's wife, T. Miller, is Jewish and practices Judaism, as her father is Jewish, and she was raised Jewish; however, Malul would regularly taunt her saying that she is not a real Jew because her mother is not Jewish. When T. Miller complained to corporate about Malul's behavior, they dismissed her concerns, explaining that Malul is just "sensitive."

41.     Additionally, Plaintiff complained to Defendants about the discrimination Plaintiff observed and the discriminatory treatment towards K. Miller in approximately December of 2021, very shortly before her termination from Defendants.

42.     Separate and apart from the discrimination and hostile work environment that Plaintiff was subjected to because of race and/or national origin, religion, and gender, Plaintiff was also treated unfairly because of her serious health conditions/disabilities, for reasons associated with Plaintiff's wife's serious health conditions/disabilities and in retaliation for requesting reasonable accommodations (time off) related to Plaintiff's own disabilities. Moreover, Defendants blatantly violated Plaintiff's FMLA rights.

43.     Plaintiff has and continues to suffer from disabilities, including but not limited to mental health disorders, including bi-polar and depression, and other qualifying ADA disabilities.

44.     Despite Plaintiff's aforesaid health conditions/disabilities, Plaintiff performed her job duties well.

45.     However, Plaintiff, at times, did require reasonable accommodations, such as time off for doctor's visits and to care for and treat her serious health conditions/disabilities.

46.     For example, in or about early 2021, Plaintiff took a few days off from work because of a flare-up of Plaintiff's mental health conditions/disabilities.

47.     Even though Defendants did not offer any PTO, these days constituted ADA and FMLA qualifying leave.

48.     At all times relevant during Plaintiff's employment with Defendants, management, including but not limited to Malul and Plaintiff's other aforesaid supervisors, were aware of Plaintiff's disabilities. For example, Malul approached Plaintiff about being "moody,"

wherein Plaintiff explained the nature of her aforesaid mental health conditions and that Plaintiff took medication for same.

49.    In or about December/January of 2022, Plaintiff suffered a severe flare-up of her aforesaid mental health conditions after the death of her brother-in-law (who passed away on December 31, 2021) and required ADA/FMLA qualifying time off from work as a result.

50.    While Plaintiff was already on FMLA related to her wife's surgery (as discussed below), Plaintiff also made management (including the aforementioned supervisors) aware of her ADA/FMLA needs and that the time off from work she required was specifically due to the flare-up in her conditions.

51.    Although Plaintiff was eligible for FMLA, at no point in time when Plaintiff required leave to care for and treat for her aforesaid health conditions did Defendants' management ever inform Plaintiff of her individualized FMLA rights, as required by the FMLA. Therefore, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA as it related to Plaintiff's FMLA needed connected to her own serious health conditions/disabilities.

52.    Moreover, Defendants' management, including each of the aforementioned supervisors, exhibited clear frustration at that time towards Plaintiff's need for any time off to grieve and care for her serious health conditions/disabilities. For example, Defendants (upon information and belief, through each of the aforementioned supervisors) required Plaintiff to report to work just a few days after Plaintiff's brother-in-law's funeral, on or about January 12, 2022, wherein Plaintiff was berated for advising tenants of their legal rights (discussed further *infra*).

53.     In addition, Plaintiff was also treated unfairly for reasons associated with her wife's health conditions and in connection to Plaintiff's FMLA needs related to Plaintiff's wife's serious health conditions/disabilities.

54.     Plaintiff's wife suffers from qualifying ADA disabilities, including Uterine Fibroids, which at times, caused her significant pain, heavy bleeding, and fatigue (among other symptoms).

55.     This condition began to intensify towards the end of Plaintiff's employment with Defendants, requiring Plaintiff's wife to undergo surgery in or about November of 2021.

56.     As a result, Plaintiff requested and was granted FMLA leave from in or about November 23, 2021 until January 18, 2022, to care for her wife's aforesaid health conditions.

57.     However, Defendants, including each of the aforementioned supervisors, interfered with Plaintiff's FMLA rights and subjected her to harassing emails and texts on an excessive basis while Plaintiff was on FMLA leave, often requiring Plaintiff to address or handle work matters, including requiring Plaintiff to come to work for the aforesaid January 12, 2022 meeting, wherein Plaintiff was harassed for advising tenants of their legal rights (as discussed more fully below).

58.     As it relates to Plaintiff advising Defendants' tenants of their legal rights, Plaintiff had objected to management, including each of the aforementioned supervisors, on behalf of multiple tenants for several months leading up to her termination based on clearly unfair and illegal treatment of the tenants by Defendants, as well as unsafe living conditions within Defendants' properties.

59.     Many of Defendants' tenants were without working heat, were living in subpar conditions (*i.e.,* holes in ceilings, insects, etc.), and without working appliances.

11

60.    Defendants' management also treated Section 8 housing tenants disparately, charging them excessive charges that other tenants did not have to pay.

61.    Defendants' management would also routinely ignore tenants' complaints, despite Plaintiff forwarding their concerns on multiple occasions.

62.    Defendants' management refused to fulfill work orders and even routinely ignored calls, letting answering machines take the messages.

63.    As a result, when tenants came to Plaintiff to ask about their rights related to aforementioned violations and unfair treatment by Defendants, Plaintiff directed them to the tenant rights posters listed in Defendants' main buildings – which outlined their ability to reach out to the township or State Health Department.

64.    As a result of Plaintiff fulfilling her obligation to inform these tenants of their rights, several made complaints to the Health Department.

65.    Consequently, at the January 12, 2022 meeting (that Plaintiff was directed to attend even though she was on an approved FMLA and was also treating and caring for her own serious health conditions/disabilities), Hirsch told Plaintiff that she should think about whether she really wanted her job and if it "was the job for Plaintiff," because Plaintiff allowed tenants to exercise their legal rights.

66.    During this meeting, Hirsch further referenced Plaintiff's FMLA leave during this conversation and that Defendants and Plaintiff would have a serious talk after Plaintiff "returned from FMLA leave."

67.    Following that meeting, Plaintiff emailed Defendants' management, including each of the aforementioned supervisors, that Plaintiff believed she was being treated unfairly and

threatened with termination because of several of the above-mentioned acts of discrimination and retaliation.

68.    Shortly after sending that email, Plaintiff was locked out of her work email and other accounts beginning on or about January 14, 2022.

69.    Following this, Plaintiff was then abruptly terminated on or about January 18, 2022, **the same day that Plaintiff returned from FMLA leave**.

70.    During Plaintiff's termination meeting, which included Hirsch, Hertz, and Malul, Defendants' management directly referenced Plaintiff's complaints of discrimination and retaliation. However, Defendants then claimed that Plaintiff was being terminated only because Plaintiff was "not a good fit for the company."

71.    Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendant because of her race and/or national origin, actual/perceived/record of disability, religion, gender, for reasons associated with Plaintiff's wife's disabilities as well as for Plaintiff's complaints of discrimination, retaliation, and Conscientious Employee Protection Act ("CEPA"). As it pertains to being negatively associated with Plaintiff's wife's health/disabilities, Plaintiff believes that Defendants (a) perceived Plaintiff as being distracted when dealing with wife's health problems outside of work; (b) perceived Plaintiff as having to miss too much time from work to care for her wife; and/or (c) had other negative perceptions of Plaintiff in association with her wife's health problems. In addition to the foregoing, Plaintiff also believes that Defendants failed to accommodate Plaintiff and/or to reinstate Plaintiff to the same or similar position she held prior to her FMLA leave, interfered with he rights under the FMLA and retaliated against her for taking/requesting FMLA leave by terminating her.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination [2] Retaliation**
**and [3] Failure to Accommodate)**
**Against Defendants Goldcrest and Cedar Brook**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected her ability to perform life activities (such as working at times).

74.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable accommodations in the form of intermittent time off from work.

75.     Plaintiff was abruptly terminated from her employment with Defendants in close proximity to her requests for/utilization of reasonable accommodations, (i.e. intermittent medical leave) for completely pretextual reasons.

76.     Prior to abruptly terminating Plaintiff, Defendants failed to accommodate Plaintiff under the ADA by failing to reinstate her upon her return from medical leave and/or hold her position open during medical leave of absence. Defendant also failed to accommodate Plaintiff by forcing her to perform work while she was utilizing intermittent time off for her serious health conditions/disabilities.

77.     Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; and/or (4) Defendant's failure to properly accommodate her.

78.     These actions aforesaid constitute violations of the ADA.

**Second Cause of Action**
**Violations of the Conscientious Employee Protection Act ("CEPA")**
**N.J.S.A. 34 :19-1 *et. Seq.***
**(Retaliation/Wrongful Termination)**
**- Against All Defendants –**

79.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80.     Plaintiff was terminated for objecting to, refusing to participate within, and for assisting with reporting actions by Defendants that she reasonably believed to be unlawful.

81.     These actions as outlined throughout this Complaint constitute violations of CEPA.

**Third Cause of Action**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
-     **Against Defendants Cedar Brook and Goldcrest –**

82.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

83.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

84.     Plaintiff requested leave from Defendants, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

85.     Plaintiff had well over 1,250 hours of service with Defendant during her last full year of employment.

86.     Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

87.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

88.    Plaintiff requested FMLA-qualifying leave from in or about November of of 2021 until on or about January 18, 2022 to care for her wife's serious health conditions/disabilities.

89.    Plaintiff also requested intermittent time off related to her own serious health conditions/disabilities in the January, 2022 timeframe.

90.    Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) by failing to reinstate Plaintiff to the same or similar position upon her return from FMLA leave; (5) failing to provide Plaintiff with notice of her individual FMLA rights as it related to Plaintiff's own serious health conditions/disabilities; (6) requiring Plaintiff to perform work while on FMLA leave; and (7) in retaliation for making complaints about Defendants' FMLA violations.

91.    These actions as aforesaid constitute violations of the FMLA.

**Fourth Cause of Action**
**Violations of 42 U.S.C. Section 1981**
**([1] Race; [2] Retaliation; and [3] Hostile Work Environment)**
**- Against All Defendants –**

92.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93.    During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual

admonishment, and demeaning and/or derogatory treatment (discussed *supra*) because of her race.

94.     Plaintiff objected to the race-based discrimination she was being subjected to and for which she witnesses, but Defendants failed to take any meaningful actions regarding these concerns.

95.     Plaintiff was ultimately terminated on or about January 18, 2021 for completely pretextual reasons shortly following Plaintiff's complaints of discrimination.

96.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her race and/or her complaints about race-based discrimination and treatment.

97.     These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Section 1981.

**Fifth Cause of Action**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race and/or National Origin Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-    Against Defendants Cedar Brook and Goldcrest –**

98.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99.     Plaintiff re-alleged and re-states all allegations as set forth in the Fourth Cause of Action of this Complaint as they also constitute identical violations of Title VII. Additionally, Plaintiff contends that she witnessed discrimination on the basis of national origin and complained about such treatment to Defendants' management.

100.    These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Title VII.

**Sixth Cause of Action**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1] Associational Disability Discrimination; [2] Hostile Work Environment)**
**-    Against Defendants Cedar Brook and Goldcrest –**

101.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

102.    Plaintiff's wife has suffered from qualifying health conditions under the ADA, as outlined above, which caused serious complications and the need for surgery.

103.    Plaintiff informed Defendants of her wife's health conditions and hospitalization and also took an FMLA leave in connection with her wife's surgery and recovery.

104.    Plaintiff was terminated in close proximity to advising Defendants about her wife's conditions and immediately after taking a block leave to care for her.

105.    Defendants exhibited hostility towards Plaintiff in connection with her need for time off to care for her wife and in the same timeframe that Plaintiff was confiding in Defendants about her wife's conditions.

106.    Plaintiff believes that Defendants (a) perceived Plaintiff as being distracted when dealing with her wife's health problems outside of work; (b) perceived Plaintiff as having to miss too much time from work to care for her wife; and/or (c) had other negative perceptions of Plaintiff in association with her wife's health problems.

107.    These actions as aforesaid constitute violations of the Americans with Disabilities Act, as amended.

**Seventh Cause of Action**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination; [2] Hostile Work Environment)**
**-Against Defendants Cedar Brook and Goldcrest-**

108.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

109.    During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of her gender. Plaintiff also observed that Defendants' management was made up of men and that lower-level clerical positions within Defendants were comprised of females.

110.    As a result of this conduct, Plaintiff reasonably felt offended and that she was being discriminated against based on her sex.

111.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and ultimately terminated because of her gender.

112.    Defendant's actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**Eighth Cause of Action**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Race and/or National Origin Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against All Defendants-**

113.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

114.    Plaintiff re-alleged and re-states all allegations as set forth in the Fourth and Fifth Cause of Action of this Complaint as they also constitute identical violations of the NJ LAD.

115.    Defendants Hirsch, Hertz, Fischer and Malul are each individually liable for aiding and abetting Defendants' NJ LAD violations, as each directly participated in the discriminatory conduct, permitted, acquiesced, and adopted the same by failing to take any action to rectify the situation despite individual knowledge of the conduct (through means including complaints by Plaintiff), and further participated in the decision to terminate Plaintiff.

**Ninth Cause of Action**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Actual/Perceived/Record of Disability Discrimination [2] Retaliation and [3]**
**Failure to Accommodate)**
**-Against All Defendants-**

116.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

117.    Plaintiff re-alleged and re-states all allegations as set forth in the First Cause of Action of this Complaint as they also constitute identical violations of the NJ LAD.

118.    Defendants Hirsch, Hertz, Fischer and Malul are each individually liable for aiding and abetting Defendants' NJ LAD violations, as each directly participated in the discriminatory conduct, permitted, acquiesced, and adopted the same by failing to take any action to rectify the situation despite individual knowledge of the conduct (through means including complaints by Plaintiff), and further participated in the decision to terminate Plaintiff.

**Tenth Cause of Action**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Associational Disability Discrimination; [2] Hostile Work Environment)**
**-Against All Defendants-**

119.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

120.    Plaintiff re-alleged and re-states all allegations as set forth in the Sixth Cause of Action of this Complaint as they also constitute identical violations of the NJ LAD.

121.    Defendants Hirsch, Hertz, Fischer and Malul are each individually liable for aiding and abetting Defendants' NJ LAD violations, as each directly participated in the discriminatory conduct, permitted, acquiesced, and adopted the same by failing to take any action to rectify the situation despite individual knowledge of the conduct (through means including complaints by Plaintiff), and further participated in the decision to terminate Plaintiff.

**Eleventh Cause of Action**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation**
**-Against All Defendants-**

122.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

123.    Plaintiff re-alleged and re-states all allegations as set forth in the Seventh Cause of Action of this Complaint as they also constitute identical violations of the NJ LAD.

124.    Defendants Hirsch, Hertz, Fischer and Malul are each individually liable for aiding and abetting Defendants' NJ LAD violations, as each directly participated in the discriminatory conduct, permitted, acquiesced, and adopted the same by failing to take any action to rectify the situation despite individual knowledge of the conduct (through means including complaints by Plaintiff), and further participated in the decision to terminate Plaintiff.

**Twelfth Cause of Action**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Religious Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Defendants Cedar Brook and Goldcrest-**

125.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

126.    Plaintiff, a Muslim, was Plaintiff was subjected to a hostile work environment through disparate treatment, pretextual admonishment, discriminatory comments and/or demeaning treatment during her employment with Defendant because of her religion.

127.    Plaintiff also raised concerns about discriminatory religious-based remarks made by Defendants' management.

128.    Defendant's actions as aforesaid constitute violations of Title VII.

**Thirteenth Cause of Action**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Religious Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against All Defendants-**

129.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

130.    Plaintiff re-alleged and re-states all allegations as set forth in the Twelfth Cause of Action of this Complaint as they also constitute identical violations of the NJ LAD.

131.    Defendants Hirsch, Hertz, Fischer and Malul are each individually liable for aiding and abetting Defendants' NJ LAD violations, as each directly participated in the discriminatory conduct, permitted, acquiesced, and adopted the same by failing to take any action to rectify the situation despite individual knowledge of the conduct (through means including complaints by Plaintiff), and further participated in the decision to terminate Plaintiff.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting retaliation or discrimination in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.     Plaintiff is to be awarded punitive/liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including for emotional distress;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     */s/ Timothy S. Seiler*
            Ari R. Karpf, Esq.
            Timothy S. Seiler, Esq.
            3331 Street Road
            Two Greenwood Square, Suite 128
            Bensalem, PA 19020
            (215) 639-0801

Dated: July 12, 2023